UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE VELEZ, an individual,<br><br>Plaintiff,<br><br>v.<br><br>CLOGHAN CONCEPTS, LLC; and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-1901-BTM-BGS<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>**[ECF No. 11]** |

Pending before the Court is Defendant Cloghan Concepts, LLC's Motion to Dismiss for Failure to State a Claim and for Lack of Subject Matter Jurisdiction. (ECF No. 11). Plaintiff Jose Velez opposed the Motion, and Defendant replied. (ECF Nos. 19, 16). For reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss. (ECF No. 11).

**I.  BACKGROUND**

Plaintiff, proceeding *pro se*, initiated this action on August 15, 2018. (ECF No. 1). The original Complaint alleged violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq*, and the Unruh Civil Rights Act ("Unruh Act"), Cal. Civ. Code § 51. (ECF No. 1 "Compl."). Defendant timely

moved to dismiss the Complaint for failure to state a claim and for lack of subject matter jurisdiction.[1] (ECF No. 3). On October 3, 2018, Plaintiff filed a First Amended Complaint ("FAC") again alleging violations under the ADA and Unruh Act. (ECF No. 7 "FAC"). The FAC alleges that Plaintiff is disabled because his morbid obesity, a byproduct of his Binge Eating Disorder (BED), limits his mobility. (FAC ¶¶ 6, 7). The FAC further alleges that while patronizing Defendant's restaurant, located at 640 Tenth Ave, San Diego, CA 92101, Plaintiff encountered barriers at the reception area, the sales and service counter, and in the table arrangements that render the property inaccessible for disabled persons. (FAC ¶ 24). Plaintiff alleges that these architectural barriers prevented Plaintiff from enjoying full and equal access to the restaurant. (FAC ¶ 32). Defendant again timely moved to dismiss, arguing that Plaintiff has not alleged a disability under the ADA and consequently, that the Court lacks subject matter jurisdiction over the action. (ECF No. 16).

## II. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1241-42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). "To survive a Rule 12(b)(6) motion to dismiss, 'a plaintiff must allege enough facts to state a claim to relief that is plausible on its face.' " *Turner v. City and County of San Francisco*, 788 F.3d 1206, 1210 (9th Cir. 2015) (quoting *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008)). A claim is plausible on its face if it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v.*

---

[1] The original Complaint named additional defendants, all of whom have since been dismissed from the case. (See ECF Nos. 37, 42). For clarity, the Court details only the procedural history relating to the remaining Defendant, Cloghan Concepts, LLC.

*Twombly*, 550 U.S. 544, 570 (2007)).

Although the court "will assume the veracity of well-pleaded factual allegations," conclusory statements are not entitled to this assumption of truth. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017). "Legal conclusions may provide a framework for a complaint but 'they must be supported by factual allegations.' " *Id.* (quoting *Iqbal*, 556 U.S. at 679). The plausibility standard "demands more than an unadorned, the-defendant-unlawfully-harmed me accusation," and a "pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.' " *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555)).

## III. DISCUSSION

The FAC alleges violations of the ADA and Unruh Act. Each will be addressed in turn.

### A. ADA CLAIM

Title III of the ADA prohibits discrimination against persons with disabilities by public accommodations, stating:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To prevail on a discrimination claim under Title III, a plaintiff must show that: (1) the plaintiff is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of his disability. *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010) (citing *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007)). The parties dispute the first prong, i.e., whether Plaintiff has alleged that he is disabled within the meaning of

the ADA.

Plaintiff alleges he is disabled because he has "mobility-related limitations" resulting from "morbid obesity and a binge-eating disorder." (FAC ¶ 6). The additional weight on his frame allegedly "makes it more difficult to breathe, walk, stand and bend," and his binge-eating disorder "affects his ability to concentrate and think." (FAC ¶ 6). Plaintiff alleges that the underlying cause of his morbid obesity, the binge-eating disorder (BED), is "physiological and/or psychological." (FAC ¶ 7). The FAC elaborates that BED is classified as a mental disorder in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). (FAC ¶ 8). Defendant contends that Plaintiff has failed to allege a disability under the ADA because Plaintiff has failed to set forth an underlying *physiological*, rather than psychological, cause for his morbid obesity, which some circuits have concluded is required for obesity to qualify as a disability. (ECF No. 11-1 at 12).

The ADA defines "disability" as a "physical or mental impairment that substantially limits one or more major life activities of such individual . . . ." 42 U.S.C. § 12102(1)(A). After a series of Supreme Court decisions that narrowly defined "disability," Congress passed the ADA Amendments Act of 2008 (the Amendment Act) in an effort to broaden the scope of protection the ADA affords. 29 C.F.R. pt. 1630, app. In relevant part, one express purpose of the Amendment Act is:

> "[t]o convey that it is the intent of Congress that the primary object of attention in cases brought under the ADA should be whether entities covered under the ADA have complied with their obligations, and to convey that *the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis . . . .*"

*Id.* (emphasis added). Although neither the ADA nor the Amendment Act provides a definition for the term "physical or mental impairment," the Code of Federal Regulations now supplies the following definition:

(i) Any physiological disorder or condition, cosmetic

4

disfigurement, or anatomical loss affecting one or more body systems, such as: Neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genitourinary, immune, circulatory, hemic, lymphatic, skin, and endocrine; or

(ii) Any mental or psychological disorder such as intellectual disability, organic brain syndrome, emotional or mental illness, and specific learning disability.

(2) Physical or mental impairment includes, but is not limited to, contagious and noncontagious diseases and conditions such as the following: Orthopedic, visual, speech and hearing impairments, and cerebral palsy, epilepsy, muscular dystrophy, multiple sclerosis, cancer, heart disease, diabetes, intellectual disability, emotional illness, dyslexia and other specific learning disabilities, Attention Deficit Hyperactivity Disorder, Human Immunodeficiency Virus infection (whether symptomatic or asymptomatic), tuberculosis, drug addiction, and alcoholism.

28 C.F.R. § 36.105(b)(1). The definition is silent on whether obesity independent of an underlying physiological disorder is an impairment under the ADA.

The Equal Employment Opportunity Commission (EEOC), a federal agency whose mandate includes enforcing the ADA in the workplace, has taken the position that obesity may qualify as an impairment under the ADA, but not always. *Taylor v. Burlington Northern Railroad Holdings Inc.*, 904 F.3d 846, 851 (9th Cir. 2018). The EEOC issued interpretive guidance specifying that "[t]he definition of the term 'impairment' *does not include physical characteristics* such as . . . weight . . . that [is] within 'normal' range *and* [is] not the result of a physiological disorder." 29 C.F.R. pt. 1630, app. 1630.2(h) (alterations and emphasis added). The EEOC also submitted an instructive amicus brief before the Ninth Circuit further clarifying its position on obesity as a disability:

[W]eight (1) is not an impairment when it is within the "normal" range and lacks a physiological cause but (2) may be an impairment when it *is either* outside the "normal" range *or* occurs as the result of a physiological disorder.

5

904 F.3d at 851 (emphasis added).  This position is consistent with a compliance manual the EEOC withdrew in 2012, which states: "normal deviations in height, weight or strength that are not the result of a physiological disorder are not impairments . . . . *At extremes, however, such deviations may constitute impairments.*" *Id.* (citing EEOC Compliance Manual § 902.2(c)(5)) (emphasis added).  The EEOC has not specified what weight range constitutes "normal" as opposed to "extreme."

Although the Ninth Circuit found the above EEOC guidance instructive in its consideration of a similar issue, the Ninth Circuit has not yet decided whether obesity without a physiological cause constitutes an impairment under the ADA. *Id.* at 851, 853 (stating "the scope of ADA protection for individuals suffering from obesity . . . presents an open question of federal law in this circuit").  The Second, Sixth, and Eighth Circuits have concluded it does not. *See Francis v. City of Meriden*, 129 F.3d 281, 286 (2d. Cir. 1997); *Andrews v. Ohio*, 104 F.3d 803 (6th Cir. 1997); *EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 442-43 (6th Cir. 2006); *Morriss v. BNSF Railway Co.*, 817 F.3d 1104, 1108 (8th Cir. 2016).  Other circuits remain undecided.

In the absence of clear, binding authority, the Court adopts the definition the EEOC set forth in its amicus brief and compliance manual:  weight may be an impairment when it falls outside the normal range *or* occurs as the result of a physiological disorder.  *See Turtle Island Restoration Network v. United States Dep't of Commerce*, 878 F.3d 725, 733 (9th Cir. 2017) (stating courts must defer to an agency's "interpretation of its own ambiguous regulations, which controls unless 'plainly erroneous or inconsistent with the regulation,' or where there are grounds to believe that the interpretation 'does not reflect the agency's fair and considered judgment of the matter in question.'"); *Velez v. Il Fornanio (America) Corp.*, 18-cv-1840-CAB, 2018 WL 6446169 at *4 (S.D. Cal. Dec. 10, 2018) (adopting same approach and definition in proceeding involving same plaintiff

and legal issues).  Under this definition, the Court concludes Plaintiff has alleged he has a disability under the ADA.  The FAC states Plaintiff's morbid obesity makes it difficult for him to breathe, walk, stand, and bend, all of which are major life activities. *See* 42 U.S.C. § 12102(2)(A)-(B).  As for whether Plaintiff's weight exceeds the "normal range," Plaintiff has alleged that he has morbid obesity, which is sufficient to allege his weight exceeds the normal range.

However, the Court's conclusion that Plaintiff has alleged a disability does not end the inquiry.  Plaintiff must also allege that he was denied public accommodations by Defendant because of his disability.  *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc.*, 603 F.3d 666, 670 (9th Cir. 2010).  The FAC offers only conclusory statements in this regard, and fails to state an injury-in-fact sufficient to confer standing. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 946 (9th Cir. 2011) ("[T]o invoke the jurisdiction of the federal courts, a disabled individual claiming discrimination must satisfy the case or controversy requirement of Article III by demonstrating his standing to sue at each stage of the litigation").  Plaintiff recites the ways in which Defendant's restaurant was out of compliance, stating the reception area lacked a designated space "at least 36 inches wide by at least 48 inches long for individuals with disabilities," the sales and service counters were all "higher than 36 inches above the floor," and the fixed tables "with accessible seating locations are not dispersed throughout all dining areas." (FAC ¶ 24).  But Plaintiff does not relate these alleged violations to his *particular* disability, morbid obesity and his related mobility-limitations, or set forth facts showing how any single barrier interfered with his full and equal enjoyment of Defendant's restaurant. *Chapman*, 631 F.3d at 954 (concluding plaintiff lacked Article III standing because plaintiff "never allege[d] what [the] barriers were and how his disability was affected by them so as to deny him the 'full and equal' access that would satisfy the injury-in-fact

//

requirement (*i.e.,* that he personally suffered discrimination under the ADA on account of his disability)").

Although Plaintiff need not encounter every accessibility barrier or even be fully prohibited from accessing the non-compliant facility to have standing, Plaintiff has not sufficiently alleged his personal stake in the outcome of this case or controversy to meet the pleading requirements. Because Plaintiff has failed to state a cognizable claim under the ADA, the Court dismisses the FAC as to that claim.

**B. UNRUH ACT CLAIM**

Pursuant to 28 U.S.C. § 1367(a), Plaintiff asks the Court to exercise supplemental jurisdiction over the Unruh Act claims, which arise under California law. (FAC ¶ 13).

Section 1367 provides that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367(a). However, a district court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law;

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Because the Court has dismissed all claims over which it has original jurisdiction, the Court declines to exercise supplemental jurisdiction over the

Unruh Act claims. *See* 28 U.S.C. § 1367(a), (c)(3).  The Court also declines to exercise supplemental jurisdiction out of deference to California's heightened pleading requirements for disability lawsuits under the Unruh Act, and in the interest of comity, as California courts should interpret the state's disability laws. Other courts have identified these factors as a compelling reasons to decline to exercise supplemental jurisdiction over disability claims arising under the Unruh Act. *See Schutza v. Cuddeback*, 262 F.Supp.3d 1025, 1030-31 (S.D. Cal. 2017) ("[A]s a matter of comity, and in deference to California's substantial interest in discouraging unverified disability discrimination claims, the Court declines supplemental jurisdiction over Plaintiff's Unruh Act claim."); *Il Fornanio*, 2018 WL 6446169 at *6 (outlining legislative history behind heightened pleading requirements for Unruh Act claims as basis for declining to exercise supplemental jurisdiction over disability claim); *Molski v. Hitching Post I Restaurant, Inc.*, No. 04-cv-1077-SVWRNBX, 2005 WL 3952248 at *9 (C.D. Cal. May 25, 2005) ("Because the California courts should be given an opportunity to interpret California's disability laws, because the calculated effort to avoid having California courts decide issues of California law is to be discouraged, and because the parties themselves are entitled to a surer-footed interpretation of California's disability laws, the Court finds that compelling reasons exist to decline supplemental jurisdiction over Molski's state law claims.").

    The Court accordingly declines to exercise supplemental jurisdiction, and dismisses the Unruh Act claim without prejudice as to asserting it in state court. *See Il Fornanio*, 2018 WL 6446169 at *6.

//
//
//
//
//

## IV. CONCLUSION

Defendant's Motion to Dismiss is GRANTED. (ECF No. 11). Because amendment is not futile, the Court dismisses the FAC without prejudice and grants Plaintiff leave to amend. *See Ramirez v. Galaza*, 334 F.3d 850, 861 (9th Cir. 2003) ("Leave to amend should be granted unless the pleading 'could not possibly be cured by the allegation of other facts,' and should be granted more liberally to pro se plaintiffs."). Should Plaintiff decide to file a Second Amended Complaint, he must do so on or before **July 12, 2019**. If Plaintiff fails to file a Second Amended Complaint by July 12, 2019, a final judgment will be entered dismissing the case.

IT IS SO ORDERED.

Dated: June 10, 2019

_____
Honorable Barry Ted Moskowitz
United States District Judge